| INTERSTATE ELECTRIC COMPANY | : | NO. 8284 |
| versus | : | COURT OF APPEAL |
| MAX GOLDBERG | : | PARISH OF ORLEANS |

WILLIAM A. BELL, JUDGE:

June 5th, 1922.

BY: WILLIAM A. BELL, JUDGE:

Plaintiff herein seeks to enjoin defendant from removing certain buildings from property situated in the City of New Orleans, in Square 201, bounded by St. Charles Avenue, Prytania, Felicity and Polymnia Streets. This property, more particularly described in the petition for injunction, was sold by the defendant to plaintiff for cash, on February 26th, 1920, by act before Arthur A. Moreno, Notary Public. The deed of conveyance contained the usual contractual clauses for a cash transaction, or sale, in real estate, and then concluded with the stipulation, to which both the parties subscribed, and which read? as follows:

"THE PRESENT BUILDINGS TO BELONG TO THE VENDOR AND TO BE REMOVED BY HIM WHENEVER PURCHASER DECIDES TO CALL UPON SAID VENDOR TO DO SO."

This injunction suit was instituted upon the allegation in plaintiff's petition that, notwithstanding the stipulation above quoted, ~~that~~ Max Goldberg, defendant herein, had illegally and wrongfully notified the tenants living in the buildings situated on the land purchased by petitioner, to remove therefrom, and threatened to trespass on petitioner's land, or property, for the purpose of removing the buildings, and that he would so remove the buildings, without petitioner's consent, unless prevented from doing so by injunction.

It is further alleged that the trespass on petitioner's property, and removal of the buildings therefrom, would work irreparable injury, and the petitioner further desired the injunction to prevent the defendant from trespassing on its property, and from removing the buildings therefrom until requested to do so by petitioner, and from interfering with petitioner in the collection of rents from the tenants occupying

546

the said property of petitioner, and the buildings thereon.

Concluding with the declaration that the said illegal and wrongful acts of Max Goldberg, in notifying the tenants to vacate the property, and petitioner's rights therein, exceeded One Thousand Dollars ($1,000) and with reservation in the petition to claim damages, sustained by supplemental petition, the prayer was that the said Goldberg be restrained from trespassing on the property, or removing the buildings until requested by plaintiff to do so, and from interfering with the collection of rents from tenants occupying the buildings on said property. Bond being furnished by petitioner, the Court peremptorily issued a restraining order, in compliance with the prayer of the petitioner.

Answering, defendant in injunction admitted that he had notified the tenants in the buildings located on petitioner's property to remove therefrom, and that he, defendant, intended also to remove the buildings, as he had a legal right to do, under the act of sale, a copy of which had been attached to plaintiff's petition, and further answering, he averred that the true, fair, and correct interpretation of the clause or stipulation referred to in plaintiff's petition, and which is quoted above, as the last clause, or stipulation, in the aforesaid act of sale, was that defendant owned said buildings, and that he had a legal right to remove said buildings at any time he desired, and that while said buildings remained on said land, defendant had a right to collect the revenues therefrom; and further answering, defendant averred that plaintiff had no interest in the buildings, nor any legal right to collect the rents therefrom, and was therefore, not entitled to an injunction in the premises.

At the hearing of this cause in the trial court, there was no testimony taken except that of Max Goldberg, the defendant, who, in answer to questions, stated his name, declared that he was the defendant in the suit, and then was further asked the following questions:

"Q. Are you the same Max Goldberg who sold to the Interstate Electric Company, on the 26th of February, 1920, a certain piece of property described in the petition?

A. Yes.

Q. In this act there was a provision, which I read to you. (Mr. Scharff reads the clause in the act) Will you explain that provision?

BY MR. LEMLE: Counsel for the plaintiff objects to any parole evidence to contradict, vary or alter the written terms of the act of sale. It is for the Court to draw its own conclusions from the language of the act.

THE COURT: (After argument by Counsel) The objection is sustained."

There was judgment by the trial court dismissing plaintiff's suit at its cost, and dissolving the injunction, reserving to defendant the right to bring suit against plaintiff for whatever damages he may have sustained by the illegal issuance of the injunction. From this judgment plaintiff has appealed.

Because of the exclusion by objection, timely made, of all evidence attempted to be introduced by defendant in this case, there are no facts before us except as disclosed from the record through pleadings and documentary evidence.

The sole question, therefore, for our decision, is, does the stipulation in the deed, as above quoted, give the vendor the right to remove the buildings whenever it pleases him to do so, or only when the purchaser decides to call upon said vendor to do so.

It is urged by the plaintiff that no other construction can be placed upon the stipulation under consideration, except that the buildings, though belonging to the vendor, and reserved as his property, could not be removed until the purchaser, or plaintiff herein, decided to call upon defendant to remove them. He prefaces his remarks in support of this

argument by calling the attention of this Court to Art. 2474, R.C.C., as a rule of construction which must be applied to the aforesaid stipulation. This article reads as follows:

> "The seller is bound to explain himself clearly respecting the extent of his obligations, and any obscure or ambiguous clause is construed against him."

In support of counsel's contention, he cites with complete reliance therein, the ruling in Mower v. Richardson, 124 La. 130, in which the Court said:

> "Indeed, if the case admitted of any doubt as to whether the land was being sold with, or without its timber, the doubt would have to be resolved against plaintiff, (the seller) for 'The seller is bound to express himself clearly respecting the extent of his obligation, and any obscurity or ambiguous clause is construed against him.'" R.C.C. 2474.

We see no application which can be made of the above cited case to the facts in the case before us, for in the cited case we find that the whole discussion was whether, in the conveyance of land, growing timber thereon, it was intended by the parties to the sale that both the land and the timber, rather than the land only, was to be conveyed. No such question arises in the case before us, for it has been carefully stipulated in the act of sale that the land passed to the purchaser, and the buildings have been reserved to the vendor.

In argument and briefs, both counsel for these proceedings have discussed matters concerning rents, etc., in connection with the contentions of these litigants, also the question of taxes and insurance, etc., as reasons which led up to, or introduced the interpolation of the clause now under discussion. These arguments cannot be considered by the Court, for the reason that there is no evidence in the record which justifies their consideration. We can only determine the correctness, or not, of the ruling of the trial court, from the language of the stipulation itself.

549

In order to accept the view taken by the plaintiff as to the meaning of the stipulation, we would be impelled to the conclusion, unfavorable to petitioner, that the clause contains a potestative condition, upon which the law of this State, in matters of contractual obligations, looks with disfavor. Art. 2034, R.C.C. provides that "every obligation is null that has been contracted on a potestative condition on the part of him who binds himself."

It is contended by plaintiff that the only interpretation to be given the clause is that though the vendor owned the buildings, he could not, at any time, remove them from the land upon which they were located, until the purchaser, or plaintiff herein, should decide to call upon him to do so. This construction would give to the plaintiff an undoubted power of indefinitely withholding from defendant the right to remove the buildings, unless, and until plaintiff decided they could be removed. In our opinion, this would be null and void, because violative of all rights of the owner of the buildings, to exercise the priveleges of ownership, which were particularly reserved to him in the clause.

In the case of Consumers' Ice Company v. Trautman & Co., 45 Ann. 775, the plaintiff sued defendants for ice sold and delivered, and by reconventional demand, defendant admitted the main indebtedness, but claimed that plaintiff was indebted to it for a larger sum, due under an alleged contract between the parties, by which plaintiff was to furnish ice to defendant at a stipulated price, until a pool was formed of all ice companies, in which defendant was to be included. It was contended by plaintiff, in answering the reconventional demand, that the agreement for this reduced, or stipulated price, pending the formation of a pool, had long since terminated, in as much

as the pool, as contemplated, had been formed, and that deliveries by it to the defendant thereafter, were not subject to the agreement. It was contended, on the other hand, by the defendant, that they had not entered the pool, and that this fact prevented the termination of the first contract made with plaintiff, by which the latter was obligated to sell ice at the reduced rate. To this contention, the Supreme Court, in affirming the judgment appealed from, denying the reconventional demand, said:

> "To say that the refusal of defendants to go into the pool continued the contract alleged to have been made with them by the plaintiff,. would be to make the condition potestative, and therefore null and void. Civil Code 2034."

If the construction advanced by plaintiff in this case were adopted, the buildings might be kept on the land forever, beyond the wishes of the vendor, and in compliance with the arbitrary wishes of the vendee. In other words, the vendor could be compelled to leave the buildings permanently on the land.

In the case of Texas & Pacific Railroad Company v. City of Marshall, 136 U.S., 393, there was a contract made between the City of Marshall, Texas, and the Railroad Company, by which it was agreed that in consideration of the donation of certain sums of money and certain land by the City of Marshall, that the Texas and Pacific Railroad Company would permanently establish its eastern terminus and Texas office at the City of Marshall, and would also there construct certain machine shops and car works. After eight years' interval, and after the contract had been fully carried out by both parties, the Railroad Company attempted to remove various parts of its shops and its Texas office to other cities, and to cease to make the City of Marshall the terminus as agreed upon. The Supreme Court ruled that it could not be supposed that the parties intended a covenant

to build and re-build, and a covenant never to change any of its offices or the place of manufacturing cars, or other machinery necessary for the use of its Company, nor that it would forever keep up, for the benefit of the Town of Marshall, these establishments, when once organized. See also 74 U.S. 290, Mead v. Ballard.

Art. R.C.C. 3556, Par. 20, defines the word obligee, or creditor, as "a person in favor of whom some obligation is contracted, whether such obligation be to pay a sum of money, or to do, or not to do, something." Surely, the obligee in the clause under discussion was the plaintiff, in whose favor defendant,Goldberg, agreed to do something, that is, to remove the buildings whenever plaintiff should decide to call upon him to do so. It could not be denied, on the other hand, that the defendant was the obligor, who, as the Civil Code says, (Art. 3556, Par. 21), is"the person who has engaged to perform some obligation."

Now the Civil Code also provides (Art. 2048) that the "term" of an obligation, is the time given, or the limit for the performance of an obligation. Art. 2053 also says that "The term is always presumed to be stipulated in favor of the debtor, unless it results from the stipulation, or from circumstances, that it was also agreed upon in favor of the creditor."

In the contract before us, it may rightly be said that the term, or time given for the performance of the obligation to remove the buildings, is in favor of the obligor, in that he is not required, or obligated to remove them immediately, but only whenever the purchaser decides to call upon him to do so. By no possible construction of either Art. 2053 R.C.C., or of the stipulation in the contract itself, could it be said that the "term" of the contract, that is, its time of performance, must here be also construed in favor of the obligee.

Even without the assistance given us by applying these codal rules of interpretation to the stipulation relied upon, we are of the opinion that all of the rules of common sense impel the construction that the defendant, while obligated to remove the buildings whenever requested to do so, was certainly at liberty to remove them though not requested, whenever he desired to take unto himself, and to appropriate to his own use and benefit, that which was declared in the stipulation to be exclusively his own.

JUDGMENT AFFIRMED

AT PLAINTIFF'S COST IN BOTH COURTS

June 5th, 1922.